Michael L. Baum (SBN 119511)
Ronald L.M. Goldman (SBN 33422)
Roger D. Drake (SBN 237834)
BAUM, HEDLUND, ARISTEI & GOLDMAN, P.C.
12100 Wilshire Boulevard, Suite 950
Los Angeles, California 90025-7114
Telephone: 310.207.3233
Facsimile: 310.820.7444

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Eddie Johnson, III, as personal representative of the Estate of Curtis Johnson, deceased,<br><br>Plaintiff,<br><br>v.<br><br>SmithKline Beecham Corporation, d/b/a GlaxoSmithKline, a Pennsylvania corporation,<br><br>Defendant. | CASE NO:<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs allege on information and belief:

## JURISDICTION AND VENUE

1. Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332. The matter in controversy exceeds the sum of seventy five thousand ($75,000.00) dollars, exclusive of interest and costs.

2. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 with respect to claims that form part of the same case or controversy.

1.

COMPLAINT FOR DAMAGES

3. Venue is based on 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions on which the claims are based occurred in this district.

## PARTIES

4. Plaintiff Eddie Johnson, III, is the duly appointed personal representative of the Estate of Curtis Johnson, deceased. The plaintiff's decedent, Curtis Johnson, was a resident of Sacramento County, California at the time of his death.

5. SmithKline Beecham Corporation d/b/a GlaxoSmithKline, a Pennsylvania corporation was, and still is, a corporation duly existing under and by virtue of the laws of the State of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania.

6. At all times relevant, defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline was, and still is, a pharmaceutical company involved in researching, manufacturing, selling, merchandising, advertising, promoting, labeling, analyzing, testing, distributing and marketing of pharmaceuticals for distribution, sale, and use by the general public, including its antidiabetic agent rosiglitazone maleate under the trade names of Avandia Tablets, Avandamet Tablets, and Avandaryl Tablets.

## GENERAL ALLEGATIONS

7. Rosiglitazone maleate ("rosiglitazone") is researched, manufactured, sold, merchandised, advertised, promoted, labeled, analyzed, tested, distributed and marketed by the GSK Defendants under the trade names of Avandia Tablets, Avandamet Tablets, and Avandaryl Tablets (hereinafter collectively referred to as "Avandia"), and is a member of the class of drugs known as Thiazolidinediones ("TZDs"). Avandia was first approved for use in the United States by the Food and Drug Administration ("FDA") in 1999 for the use in treatment of type 2 diabetes mellitus, also known as non-insulin-dependent diabetes mellitus.

8. Most people with diabetes have risk factors such as high blood pressure and cholesterol that provide a pre-existing susceptibility for heart disease and stroke. More than 65 percent of deaths in patients with diabetes are from cardiovascular causes. The effect of any

antidiabetic therapy is particularly important because the reason for antidiabetic therapy is to reduce the complications of diabetes, the most serious of which is heart disease.

9. During the past decade, drugs have been introduced for the treatment of type 2 diabetes that, used in monotherapy or in combination therapy, are supposed to better control the disease in patients and reduce health complications associated with diabetes, such as heart attacks, strokes, and other cardiovascular complications.

10. Before and on or about the time when Avandia was prescribed and used by Dr. Gamal Hussein, the GSK Defendants knew, or should have known, that Avandia was associated with a significant increased risk of heart failure, myocardial ischemia and ischemic events such cardiovascular mortality, myocardial infarction, and stroke.

11. The risk of heart failure, also referred to as congestive heart failure, in patients taking Avandia led to labeling revisions as marketing experience and the results of further clinical trials were reviewed by the Food and Drug Administration.

12. On August 14, 2007, the warnings, precautions, and contraindications sections of the Avandia label were changed again regarding the potential increased risk of heart failure, and the following new black box warning was added to the label:

> WARNING: CONGESTIVE HEART FAILURE
>
> Thiazolidinediones, including rosiglitazone, cause or exacerbate congestive heart failure in some patients (see WARNINGS). After initiation of AVANDIA, and after dose increases, observe patient carefully for signs and symptoms of heart failure (including excessive, rapid weight gain, dyspnea, and/or edema). If these signs and symptoms develop, the heart failure should be managed according to current standards of care. Furthermore, discontinuation or dose reduction of AVANDIA must be considered.
>
> AVANDIA is not recommended in patients with symptomatic heart failure. Initiation of AVANDIA in patients with established NYHA Class III or IV heart failure is contraindicated. (See CONTRAINDICATIONS and WARNINGS.)

3.

13. On November 19, 2007, the warnings, precautions, and indications sections of the Avandia label were changed again regarding the potential increased risk of myocardial ischemia, and the following language was added to the black box warning:

> WARNING: CONGESTIVE HEART FAILURE AND MYOCARDIAL ISCHEMIA
>
> A meta-analysis of 42 clinical studies (mean duration 6 months; 14,237 total patients), most of which compared AVANDIA to placebo, showed AVANDIA to be associated with an increased risk of myocardial ischemic events such as angina or myocardial infarction. Three other studies (mean duration 41 months; 14,067 patients), comparing AVANDIA to some other approved antidiabetic agents or placebo, have not confirmed or excluded this risk. In their entirety, the available data on the risk of myocardial ischemia are inconclusive.

14. Before the label changes on August 14, 2007 and November 19, 2007, Curtis Johnson ingested Avandia in Sacramento, California.

15. As a direct and proximate cause of ingesting Avandia, Curtis Johnson suffered from heart failure and myocardial ischemia, including a myocardial ischemic event that resulted in hospitalization and death.

16. Before and at or about the time of Curtis Johnson's ingestion of Avandia, the GSK Defendants had the knowledge, the means, and the duty to provide the medical community and the consuming public with more accurate descriptive information and more adequate warnings regarding the association between Avandia and heart failure, and the association between Avandia and myocardial ischemia and ischemic events such cardiovascular mortality, myocardial infarction, and stroke, through all means necessary, including, but not limited to, labeling, continuing education, symposia, posters, sales calls to doctors, advertisements, and promotional materials.

17. At all times relevant, the GSK Defendants failed and refused to warn prescribing medical providers, and the consuming public, of the risks associated with Avandia that were known, or should have been known, as alleged herein.

4.

18. At all times relevant, the GSK Defendants engaged in extensive mass media direct-to-consumer promotion, education, and advertising of Avandia for the purpose of increasing sales and stimulating consumer requests for Avandia prescriptions, independent of the advice of medical professionals.

19. At all times relevant, defendants, and each of them, and their aggregates, corporates, associates, and partners, and each of them, were the agent, servant, employee, assignee, permissive user, successor in interest, or joint venturer of each other, and were acting within the time, purpose, or scope of such agency or employment or permission; and all acts or omissions alleged herein of each such defendant were authorized, adopted, approved, or ratified by each of the other defendants.

## FIRST CLAIM FOR RELIEF

### (Negligence)

20. Plaintiff incorporates by reference each and every prior and subsequent allegation of this complaint as if fully restated here.

21. At all times relevant, GSK was under a duty to exercise reasonable care in the researching, manufacturing, selling, merchandising, advertising, promoting, labeling, analyzing, testing, distributing and marketing of Avandia for distribution, sale, and use by the general public, to ensure that Avandia's use did not result in avoidable injuries.

22. Decedent's injuries as described herein were caused by the negligence and misrepresentations of GSK though its agents, servants and/or employees acting within the course and scope of their employment including among other things:

(a) Carelessly and negligently researching, manufacturing, selling, merchandising, advertising, promoting, labeling, analyzing, testing, distributing and marketing Avandia;

(b) Failing to fully disclose the results of the testing and other information in its possession regarding the association between Avandia and heart failure, and the association between Avandia and myocardial ischemia and ischemic events such cardiovascular mortality, myocardial infarction, and stroke.

5.

(c) Negligently and carelessly failing to adequately warn the medical community and the general public, including Curtis Johnson and his treating and prescribing medical provider(s), of the dangers of using Avandia;

(d) Negligently and carelessly describing and promoting Avandia as safe and effective;

(e) Negligently and carelessly failing to act as a reasonably prudent drug manufacturer;

(f) Negligently and carelessly over-promoting and promoting Avandia in a zealous and unreasonable way, without regard to its potential dangers;

23. As a direct and proximate cause of the conduct, acts and omissions of GSK, Curtis Johnson suffered severe injuries for a measurable period of time until he thereafter died as a result of said injuries.

24. As a direct and proximate cause of the conduct, acts, and omissions of GSK, Curtis Johnson and his survivors, beneficiaries, and heirs incurred hospital, medical, and related expenses, the reasonable and total value of which to be proven at the time of trial.

25. As a direct and proximate result of the conduct of GSK, Curtis Johnson's survivors, beneficiaries, and heirs incurred the costs of decedent's funeral, burial, and related expenses in an amount to be proven at the time of trial.

26. As a direct and proximate result of the conduct of GSK, Curtis Johnson's survivors, beneficiaries, and heirs have sustained the loss of his support, services, and other financial benefits as well as the loss of her love, society, companionship, comfort, affection, advice and moral support all to general damages in an amount in excess of the minimum jurisdictional amount of this court.

## SECOND CLAIM FOR RELIEF

**(Negligent Pharmaco-Vigilance)**

27. Plaintiff incorporates by reference each and every prior and subsequent allegation of this complaint as if fully restated here.

28. GSK has an ongoing duty of pharmaco-vigilance. This duty requires, among other things, GSK to continually monitor, test, and analyze data regarding the safety, efficacy, and prescribing practices of its marketed drugs, including Avandia.

6.

29. GSK continually receives reports from clinical trials, physicians, patients, and regulatory authorities of adverse events that occur in patients taking Avandia. Furthermore, GSK continues to conduct clinical trials for its drugs after their drug is approved for use.

30. GSK had the means and the resources to perform its pharmaco-vigilance duties for the entire time Avandia has been on the market in the United States.

31. GSK has a duty to monitor epidemiological and pharmaco-vigilance data regarding their drugs and promptly report to the FDA, medical professionals, and the public, any safety concerns that arise through epidemiologic study or data.

32. GSK breached this duty with respect to Curtis Johnson, his treating and prescribing medical providers, and Plaintiff. GSK learned, or should have learned, through various sources, including but not limited to, clinical trials and other adverse event reports, that there was a substantial risk of heart failure, myocardial ischemia and ischemic events such cardiovascular mortality, myocardial infarction, and stroke associated with the use of Avandia and failed to inform doctors, regulatory agencies, and ordinary consumers, including Curtis Johnson, of this risk.

### THIRD CLAIM FOR RELIEF

### (Strict Liability—Failure to Warn)

33. Plaintiff incorporates by reference each and every prior and subsequent allegation of this complaint as if fully restated here.

34. GSK's extensive direct-to-consumer promotion and advertising of Avandia created the duty to warn ordinary consumers, including Curtis Johnson, of the risks associated with Avandia alleged herein, in addition to the duty GSK owed to medical professionals.

35. At all times relevant, ordinary consumers and prescribing medical providers would not have recognized the potential increased risk of heart failure, myocardial ischemia and ischemic events such as cardiovascular mortality, myocardial infarction, and stroke associated with ingestion of Avandia in the absence of adequate warnings thereof by GSK.

36. At all times relevant, GSK failed to adequately warn ordinary consumers and medical providers, including Curtis Johnson and his treating and prescribing medical providers, of the

7.

potential increased risk of heart failure, myocardial ischemia and ischemic events such cardiovascular mortality, myocardial infarction, and stroke associated with ingestion of Avandia.

## FOURTH CLAIM FOR RELIEF

### (Breach of Express Warranty)

37. Plaintiff incorporates by reference each and every prior and subsequent allegation of this complaint as if fully restated here.

38. GSK's extensive direct-to-consumer advertising of Avandia created the duty to notify ordinary consumers, including Curtis Johnson, that Avandia was not as represented, in addition to the duty GSK owed medical professionals.

39. At all times relevant, GSK, by directly and indirectly advertising, marketing, and promoting Avandia for the treatment of type 2 diabetes and by placing this drug in the stream of commerce knowing that Avandia would be prescribed to patients with type 2 diabetes in reliance upon the representations of GSK, expressly warranted to all foreseeable users of the drug, including Curtis Johnson, that Avandia was safe and effective for the treatment of patients with type 2 diabetes without a significantly increased risk of heart failure, myocardial ischemia and ischemic events such cardiovascular mortality, myocardial infarction, and stroke and without a significantly increased risk of heart failure.

40. Curtis Johnson and his treating and prescribing medical providers reasonably relied upon the aforesaid express warranties by GSK.

41. GSK breached the aforesaid express warranties because Avandia was not safe for the treatment of patients with type 2 diabetes.

## FIFTH CLAIM FOR RELIEF

### (Breach of Implied Warranty)

42. Plaintiff incorporates by reference each and every prior and subsequent allegation of this complaint as if fully restated here.

43. GSK's extensive direct-to-consumer advertising of Avandia created the duty to notify ordinary consumers, including Curtis Johnson, that Avandia was not as safe and effective for the

8.

purposes for which it had been placed in the stream of commerce, in addition to the duty GSK owed medical professionals.

44. GSK impliedly warranted to all foreseeable users, including Curtis Johnson and his prescribing medical provider(s), that Avandia was safe and effective for the purposes for which it had been placed in the stream of commerce by GSK, and that Avandia was reasonably safe, proper, merchantable and fit for the intended purpose.

45. Curtis Johnson and his prescribing medical providers reasonably relied upon the aforesaid implied warranties by GSK.

46. GSK breached the aforesaid implied warranties in that Avandia was not safe for the treatment of patients with type 2 diabetes, among other things.

## SIXTH CLAIM FOR RELIEF

### (Fraud)

47. Plaintiff incorporates by reference each and every prior and subsequent allegation of this complaint as if fully restated here.

48. In deciding whether to prescribe a drug, prescribing medical providers do a risk/benefit assessment in determining which drug to prescribe. Prescribing medical providers, such as Curtis Johnson's prescribing medical provider(s), relied, and continue to rely, on the information received about Avandia from various sources, such as journal articles, journal advertisements, company literature, the Physicians' Desk Reference, labels, package inserts, and discussions with GSK's sales people. Such information must be accurate and provide an unbiased picture of a drug's safety and efficacy in treating a condition. If the information is false or misleading, prescribing medical providers, such as Curtis Johnson's prescribing medical provider(s), cannot accurately assess the crucial risk/benefit balance for the patient or exercise proper professional judgment that is independent. Consequently, the prescribing medical provider, including Curtis Johnson's treating and prescribing medical provider(s), could not, and cannot, act in accordance with the professional and fiduciary obligations owed to the patient, nor can patients, such as Curtis Johnson, give informed consent to the treatment.

49. In caring for themselves, and as part of diabetes management, type 2 diabetes patients had, and have, the option to refrain from using certain prescription drugs or to request alternative prescription drugs in order to minimize health risks. In deciding whether to refrain from using Avandia, or to request alternative medications, ordinary consumers relied, and continue to rely, on information received about Avandia from various sources, such as direct-to-consumer and other advertisements, company literature, and package inserts. Such information must be accurate and provide an unbiased picture of a drug's safety and efficacy in treating a condition. If the information is false or misleading, ordinary consumers, such as Curtis Johnson, could not, and cannot, accurately assess their options to refrain from using Avandia or to request alternative medications.

50. Concealing adverse information and providing inaccurate or biased information that is material to a decision misleads the prescribing medical providers and misleads the patient, as was the case with Curtis Johnson and his treating and prescribing medical provider(s). This misleading information, along with omissions of material facts related to Avandia's safety, cause health care providers, ordinary consumers, and the general public to be misled about Avandia's risks and benefits and deprive prescribing medical providers from making a proper risk/benefit assessment as to the use of Avandia and deprive ordinary consumers from properly weighing their mediation options.

51. GSK's advertising program, by affirmative misrepresentations and omissions, falsely and deceptively sought to create the image and impression that the use of Avandia was safe for human use; had no unacceptable side effects; had fewer side effects than other antidiabetic agents; and would not interfere with daily life.

52. GSK purposefully concealed, failed to disclose, misstated, downplayed and understated the health hazards and risks associated with the use of Avandia. GSK, through promotional literature, deceived potential users and prescribers of said drug by relying on only allegedly positive information, including testimonials from allegedly satisfied users and celebrity spokespersons, and manipulating statistics to suggest widespread acceptability, while concealing, misstating and downplaying the known adverse and serious health effects. GSK falsely and

deceptively kept relevant information from potential Avandia users and minimized prescriber concerns regarding the safety and efficacy of Avandia and over-promoted the drug.

53. In particular, GSK engaged in the following actions, although not limited to the following actions, that constitute false and deceptive misrepresentations or omissions regarding Avandia:

(a) GSK has marketed and continue to market Avandia to ordinary consumers and medical professionals as a safer and more effective antidiabetic agent than other antidiabetic agents on the market;

(b) GSK attempted to silence Dr. John B. Buse, a diabetes expert and head of endocrinology at the University of North Carolina, Chapel Hill, by threatening him with a $4 million lawsuit and by characterizing him as a liar after he raised concerns about Avandia and heart problems in 1999;

(c) GSK failed to warn consumers and the medical community about the increased risk of heart problems associated with Avandia, and continue to do so, despite having knowledge of these health risks;

(d) GSK promoted Avandia in violation of the Federal, Food, Drug, and Cosmetic Act, which was the subject of a July 17, 2001 FDA Warning Letter;

(e) GSK's sales representatives engaged in false or misleading promotional activities with respect to the risk information in Avandia's label;

54. When said representations and/or omissions were made by GSK, it knew those representations and/or omissions to be false or misleading, or willfully, wantonly, recklessly, and consciously disregarded whether the representations and/or omissions were true. These representations and/or omissions were made by GSK with the intent of defrauding and deceiving the public in general and the medical community and with the intent of inducing the public to request and ingest Avandia and the medical community to recommend, prescribe, and dispense Avandia.

55. The aforementioned misrepresentations by GSK were reasonably relied upon by Curtis Johnson and his prescribing medical provider(s) to their detriment.

## SEVENTH CLAIM FOR RELIEF

### (Survival Action)

56. Plaintiff incorporates by reference each and every prior and subsequent allegation of this complaint as if fully restated here.

57. Plaintiff is informed and believes and thereon alleges that the conduct of GSK entitles plaintiff to an award of punitive damages pursuant to Civil Code section 3294, in that GSK acted with oppression, fraud, or malice, in conscious disregard of the rights and safety of others, including Curtis Johnson. GSK authorized or ratified the wrongful conduct for which punitive damages are requested or was personally guilty of oppression, fraud, or malice. The conscious disregard, authorization, ratification or act of oppression, fraud, or malice was on the part of an officer, director, or managing agent of the corporation

## PRAYER

WHEREFORE, Plaintiff prays for judgment against defendant as follows:

1. For general damages according to proof;
2. For special damages according to proof;
3. For punitive and exemplary damages according to proof;
4. For pre-judgment and post-judgment interest as allowed by law;
5. For costs of suit incurred herein; and
6. For such other and further relief as this court may deem just and proper.

Dated: May 15, 2009         BAUM, HEDLUND, ARISTEI & GOLDMAN, P.C.

By: _____
Michael L. Baum
Ronald L.M. Goldman
Roger D. Drake

Attorneys for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

Dated: May 15, 2009           BAUM, HEDLUND, ARISTEI & GOLDMAN, P.C.

By: /s/ Roger D. Drake
Michael L. Baum
Ronald L.M. Goldman
Roger D. Drake

Attorneys for Plaintiff

COMPLAINT FOR DAMAGES